Louis C. Beauchamp v. Commissioner.
Beauchamp v. Commissioner
Docket No. 10073.
United States Tax Court
1947 Tax Ct. Memo LEXIS 253; 6 T.C.M. (CCH) 379; T.C.M. (RIA) 47088; April 10, 1947
*253 Petitioner, a citizen of the United States, went to Edmonton, Province of Alberta, Canada, in November 1942 as an employee of Bechtel-Price-Callahan, a joint venture, building the Canol Pipe Line in Canada. He arrived in Edmonton on November 15, 1942, and remained there until March 18, 1944, when he returned to the United States. Petitioner was employed first as a moving picture operator but soon was transferred to the Labor Relations Division of the Personnel Department and shortly thereafter became assistant personnel manager of the Canol Project. Petitioner had no definite intention to abandon his residence in the United States nor to acquire residence in Canada. He considered several "opportunities" there but rejected them as unfeasible. Held, that, during the year 1943, petitioner was not a bona fide resident of a foreign country within the meaning of section 116, Internal Revenue Code, as amended by section 148 (a) of the Revenue Act of 1942, and hence his salary is not exempt from taxation. Allison Ware, Esq., Chico, Calif., for the petitioner. Leonard A. Marcussen, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $834.41 in the petitioner's income tax for the year 1943, with interest thereon amounting to $93.70. The sole issue is whether or not the petitioner was a bona fide resident of Canada, a foreign country, during the taxable year and, therefore, exempt from taxation under the provisions *255 of section 116 (a), Internal Revenue Code, as amended by section 148 (a) of the Revenue Act of 1942. Findings of Fact The petitioner is a citizen of the United States, is married, has no children, and resides at Chico, California. He filed his income tax return presumably with the collector of internal revenue for the sixth district of California. Attached to that return is the following notation: The Gross Income of $5,150.00 has been received from Bechtel-Price-callahan, Edmonton, Alberta, Canada, and constitutes the entire income for 1943. This income is not subject to U.S. Federal Tax and is, therefore, not declared for the following reasons: 1. The entire income of taxpayer for the period January 1, 1943, to December 31, 1943, inclusive, is earned income. 2. Taxpayer's income is for services rendered in a foreign country; namely, Canada. 3. Taxpayer has been a resident of a foreign country; namely, Canada, for the entire calendar year 1943. Bechtel-Price-Callahan, hereinafter called the Joint Venture, was a joint venture of several companies which united to build the Canol Pipe Line in Canada. For approximately 2 1/2 years prior to November *256 1942, the petitioner was a commercial producer of motion picture films in Pasadena, California. His equipment consisted of the machinery necessary to produce, distribute and exhibit 16 millimeter films, both sound and silent. He was the sole owner of the business. Due to priorities and the difficulty of obtaining the necessary equipment, the petitioner dissolved his business and sold his cameras and other equipment in October 1942. Thereafter he was informed that the Joint Venture was looking for some one to take over its motion picture operations in Canada and Alaska. The petitioner entered into a contract with the Joint Venture requiring a nine months' service but he could have returned to the United States at any time. At its expiration the petitioner continued in its employment without further negotiation. The petitioner went on the payroll of the Joint Venture in the early part of November 1942. He left Pasadena in October 1942, departed from San Francisco on November 11, 1942, and arrived in Edmonton, Province of Alberta, Canada, on the 15th day of that month. The necessity for procuring personnel having ceased, he left Canada on March 18, 1944, about six weeks prior to the *257 completion of the Joint Venture contract. He remained in Canada continuously from November 15, 1942, to March 18, 1944. On account of the housing shortage in Edmonton, occasioned by the influx of army and civilian personnel, the petitioner's wife was unable to move to Canada until March 1943, when he found an apartment which he and his wife occupied continuously thereafter until March 1944. In March 1943, he moved a part of his personal belongings to Canada. The petitioner was first employed as a moving picture man but soon was transferred to the Labor Relations Division of the Personnel Department and shortly thereafter became assistant personnel manager of the Canol project. In that capacity he assisted in the employment of approximately 23,000 persons. The petitioner had no definite intentions in regard to his residence in Canada or to his future residence generally after he accepted employment with the Joint Venture. He did not know how long the project would last. He had no definite plans for abandoning his residence in California and not returning to that state. The original contract for the Canol project had involved over $30,000,000 and was enlarged twice. The petitioner *258 considered several opportunities in Canada, including employment with another construction company and the establishment of his own business, but he had no definite intention to avail himself of them. He became convinced that the Alcan Highway was not in condition for touring and that the amount of trade would not justify his engaging in business in the Province of Alberta. When the petitioner left Pasadena it was his intention to give up his residence there. He never returned to reside in that city. When he returned to the United States in March 1944 he was employed and resided in San Francisco until July 1945, when he went to Chico, California, to engage in the automobile sales and service business. While in Edmonton he considered himself a resident of that community. The petitioner owned a house in Pasadena which he had purchased in 1938 for $5,000 and occupied it until November 1942. The petitioner's wife occupied the house thereafter until March 1943, when she rented it under a verbal agreement. The petitioner did not sell the house because of the rising real estate market. He sold it in October 1945 at a price higher than its market value in 1942 and 1943. During his stay *259 in Edmonton the petitioner helped to direct the Red Cross campaign in 1943 and contributed to the Community Chest and the Red Cross. He did not vote by absentee ballot while in Canada. He paid no Canadian income tax. There was a provision in his employment contract with the Joint Venture that if he were compelled to pay such a tax the Joint Venture would reimburse him or might pay the tax for him. During his stay in Canada the petitioner's post of duty was in Edmonton. He was not a bona fide resident of Canada during the calendar year of 1943. Opinion VAN FOSSAN, Judge: The single issue before us is whether or not the salary of $5,150 which the petitioner earned and received in 1943 from the Joint Venture was exempt from taxation by reason of his having been a bona fide resident of Canada during that year, as provided by section 116, Internal Revenue Code, as amended by section 148 (a) of the Revenue Act of 1942. [1]
*260 The petitioner does not challenge the propriety or the validity of the relevant regulations (Regulations 111, sections 29.116-1 and 29.211-2) [2] but contends that he conformed to the standards there established. *261 The background and legislative history of the present section 116 were discussed fully in Arthur J. H. Johnson, 7 T.C. 1040, and need no repetition here. It is sufficient to note that the basic purpose of the section was to eliminate unjust duplication of income taxes upon American citizens abroad. In the Johnson case we emphasized the fact that the word "resident" has been held to have many meanings, each relating peculiarly to its own legal setting but none of them precisely applicable to the statute under consideration. The facts in the case at bar closely parallel those in the Johnson case and also those in Michael Downs, 7 T.C. 1053; J. Gerber Hoofnel, 7 T.C. 1136 and Ralph Love, 8 T.C. 400 (February 24, 1947), with the exception that here the contract with the Joint Venture was not submitted, although its terms were described generally by the petitioner. We see no material difference between the situation before us and that set forth in those cases up to the time when the petitioner is presumed to have acquired his intention to reside in Canada, either as an employee or as a proprietor of his own business. The evidence *262 on this point is meager, equivocal and indecisive and consists largely of the petitioner's own self-serving declarations. If the petitioner's own statement of intent were all that is required in cases of this kind, many thousands could escape paying their proper income taxes by merely asserting that during the period of their service in a foreign country they "intended" to become, and therefore were, "residents" of that country. Much more than the petitioner's unsupported statement is needed to convince us that he was a bona fide resident during 1943. Furthermore, the petitioner's own testimony is not clear and unambiguous. As said in Arthur J. H. Johnson, supra: In addition, after reviewing carefully the language of the statute, the regulation and the authority cited, we have come to the conclusion, on more general grounds, that the petitioner was not within the ambit of the intent of Congress in section 116 (a) as amended. Exemption from taxation is sought. The taxing power is not relinquished unless intent to do so is expressed in clear and unambiguous terms. Wright v. Georgia R. R. & Banking Co., 216 U.S. 420. Exemptions are not based on inference. *263 Pacific Co., Ltd. v. Johnson, 285 U.S. 480. He is not shown to be in the position of suffering the hardship in the mind of the Senate Committee on Finance, when it speaks of those subject to income tax abroad; rather, the petitioner's failure to disclose any financial subjection to the law of Greenland and the whole situation disclosed as to his working there under Army regulations seem to indicate that, in seeking exemption from income taxes of the United States, he seeks the "unjust discrimination favoring individuals receiving their compensation for services abroad," in the words of the House Committee. The result of the congressional action was not to repeal the old law and subject all nonresident American citizens to tax, but, on the other hand, it was not to exempt from income tax all citizens who might be abroad, though they might have good reason so to be. We think that neither congressional intent nor effect was to permit the petitioner, temporarily in Greenland, under clearly uncertain tenure of employment, and still to at least a large degree under control of the United States, to secure exemption from income tax on his earnings. His is not the status, in *264 our view, of those whom the Senate sought to do justice, in opposing repeal of the former law. Within the new test, viewed in the light of the attitude of Congress, we may not reasonably regard him as having shown establishment of a residence for the purpose of section 116 (a) as amended, and exemption from income tax, and in our opinion he did not become "a bona fide resident" of Greenland. The petitioner stated repeatedly that he had no definite intent to establish Edmonton as his residence, that he knew that Edmonton would be his headquarters and that, after his arrival there, it was his intention that Edmonton would be his residence "while he was there." Obviously, the petitioner was using the term "residence" in its common meaning of a place in which he was living or dwelling. He testified that he "considered" several opportunities for employment after his service with the Joint Venture should be completed, but that he rejected them all as unfeasible. His investigation and consideration of these opportunities were not placed specifically within the taxable year. In any event, as the petitioner testified, "there were opportunities open and I considered several of them but as *265 to a definite intention, I had none." We see nothing in the record to contravene the petitioner's intention to return to the United States upon the completion of his employment by the Joint Venture. The tenure of that employment was wholly within his own control. During the entire period of his stay in Canada he might have returned to the United States at any time he wished. Clearly he was a "transient" within the meaning of the regulations, and had established no residence in Canada. The petitioner's prompt return to the United States before the Joint Venture contract was completed and his employment in San Francisco - later in Chico - are corroborative evidence of his continuing intention to maintain his residence in the United States. The petitioner's counsel stresses the fact that the petitioner sold his business in Pasadena and did not return to that city in 1944. However, his wife did remain in the family home until she joined her husband in March 1943, and the house was not sold until October 1945 - about three months after the petitioner had established his home in Chico. Upon a careful review of all the facts of record, giving to each its proper significance, and in *266 the light of the cases heretofore cited, we hold that the petitioner was not a bona fide resident of Canada during 1943 and hence, is not entitled to the exemption sought. Decision will be entered for the respondent. Footnotes
1. SEC. 148. INCOME FROM SOURCES WITHOUT UNITED STATES IN CERTAIN CASES. (a) Exclusion of Earned Income from Foreign Sources. - Section 116 (a) (relating to earned income from sources without the United States) is amended to read as follows: (a) Earned Income from Sources Without the United States. - (1) Foreign Resident for Entire Taxable Year. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection. (2) Taxable Year of Change of Residence to United States. - In the case of an individual citizen of the United States, who has been a bona fide resident of a foreign country or countries for a period of at least two years before the date on which he changes his residence from such country to the United States, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof), which are attributable to that part of such period of foreign residence before such date, if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.↩
2. SEC. 29.116-1. Earned Income From Sources Without the United States. - For taxable years beginning after December 31, 1942, there is excluded from gross income earned income in the case of an individual citizen of the United States provided the following conditions are met by the taxpayer claiming such exclusion from his gross income: (a) It is established to the satisfaction of the Commissioner that the taxpayer has been a bona fide resident of a foreign country or countries throughout the entire taxable year; (b) such income is from sources without the United States; (c) the income constitutes earned income as defined in section 25 (a) if received from sources within the United States; and (d) such income does not represent amounts paid by the United States or any agency or instrumentality thereof. * * * Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of sections 29.211-2, 29.211-3, 29.211-4, and 29.211-5 relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual. * * * * *
SEC. 29.211-2. Definition. - * * * * *
An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times, to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.↩